## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LONNIE J. PARKER,

     **Plaintiff,**

       **v.**

UNITED STATES DEPARTMENT OF
JUSTICE, OFFICE OF PROFESSIONAL
RESPONSIBILITY,

     **Defendant.**

Civil Action No.  15-1070 (JEB)

## MEMORANDUM OPINION

News reports that a former Assistant United States Attorney in Arkansas had represented the United States in court despite lacking a valid license to practice law got Plaintiff Lonnie J. Parker's attention.  See ECF No. 10-3 (Declaration of Lonnie J. Parker), ¶ 3.  Wanting to understand how the AUSA had been hired and permitted to litigate on behalf of the United States, and whether such misconduct could be prevented moving forward, Parker submitted a Freedom of Information Act request to Defendant, the Department of Justice's Office of Professional Responsibility.  After OPR initially told Plaintiff it would neither confirm nor deny the existence of responsive records, he administratively appealed and eventually filed suit here.  Defendant then changed course and agreed to produce all non-exempt material.  It released some records to Plaintiff and referred others to three different DOJ components for disclosure decisions.  The parties have now cross-moved for summary judgment, and the Court sides with the government on all but one issue.

## I.     Background

In February 2014, Plaintiff submitted a FOIA request to OPR, seeking records "regarding any investigation or consideration of disciplinary actions involving the unauthorized practice of law by former Assistant U.S. Attorney Lesa Gail Bridges Jackson . . . ."  ECF No. 23-1, Exh. D at 1.  OPR, which investigates allegations of improper conduct by DOJ attorneys, see 28 C.F.R. § 0.39a, initially resisted disclosure.  It issued a Glomar response, thereby refusing to confirm or deny the existence of any records responsive to Plaintiff's request.  See ECF No. 7-2 (Declaration of Ginae Barnett), ¶¶ 6, 14-15 and Exh. C.  After Plaintiff exhausted his administrative remedies, id., Exh. D, he filed suit in July 2015, alleging that Defendant had violated FOIA by failing to provide all non-exempt responsive records and failing to undertake an adequate search.  See ECF No. 1 (Complaint), ¶¶ 21-22.

Before answering, OPR moved for summary judgment, explaining that because it believed that DOJ had not officially acknowledged an investigation into Bridges Jackson, OPR's Glomar response was appropriate.  See ECF No. 7 at 4-7.  Plaintiff then filed his own summary-judgment motion and supporting materials, through which OPR learned that the Executive Office for United States Attorneys, another DOJ component, had in fact already revealed, through a document previously released to Plaintiff, that OPR had investigated Bridges Jackson.  See ECF No. 14 at 1-2.  OPR accordingly withdrew its Glomar response and summary-judgment motion and agreed to release to Parker all non-exempt records and to provide a Vaughn Index describing its withholdings.  Id.  The Court thus denied without prejudice as moot Plaintiff's motion for summary judgment.  See Minute Order of Nov. 3, 2015.

Ginae Barnett, a Government Information Specialist with OPR, then processed Parker's FOIA request and identified 251 pages of responsive documents.  See ECF No. 23-1 (Revised

Third Declaration of Ginae Barnett), ¶¶ 1, 7.  OPR released 18 pages in their entirety and,

pursuant to Exemptions 5, 6, and 7(C), withheld 20 pages in part and 149 pages in full.  It also

referred 64 pages to other DOJ components — specifically, 56 to EOUSA, 6 to the Justice

Management Division, and 2 to the Office of Information Policy — for processing and direct

response to Parker.  Id., ¶¶ 8-13.  OPR then prepared a Vaughn Index containing a description of

the 20 pages that it had withheld in part and the 149 pages that it had withheld in full, along with

the applicable FOIA exemption(s).  Id., Exh. C.

    Having produced some records, withheld others, and referred a portion to other DOJ

components, OPR believes it has satisfied its FOIA obligations and now renews its Motion for

Summary Judgment.  See ECF No. 23 (Def. Mot.).  Parker, conversely, has filed a Cross-Motion

to the same effect.  See ECF No. 27 (Pl. Mot.).  After reviewing the briefing, the Court ordered

OPR to provide four documents for *in camera* review.  See Minute Order of Sept. 26, 2016.  The

agency complied, see ECF No. 31, and, having reviewed the documents, the Court now proceeds

to address the parties' contentions.

## II.    Legal Standard

    Summary judgment may be granted if "the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  A fact is "material" if it is capable of affecting the substantive outcome of the litigation.

See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is "genuine" if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Scott

v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, 477 U.S. at 248.  "A party asserting that a

fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts

of materials in the record" or "showing that the materials cited do not establish the absence or

presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In the event of conflicting evidence on a material issue, the Court is to construe the conflicting evidence in the light most favorable to the non-moving party. See Sample v. Bureau of Prisons, 466 F.3d 1086, 1087 (D.C. Cir. 2006).

FOIA cases typically and appropriately are decided on motions for summary judgment. See Brayton v. Office of U.S. Trade Rep., 641 F.3d 521, 527 (D.C. Cir. 2011). In a FOIA case, a court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Larson v. Dep't of State, 565 F.3d 857, 862 (D.C. Cir. 2009) (citation omitted). "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" Dep't of Justice v. Reporters Comm. for the Freedom of the Press, 489 U.S. 749, 755 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)).

## III.   Analysis

Congress enacted FOIA in order "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." Dep't of the Air Force v. Rose, 425 U.S. 352, 361 (1976) (quotation marks and citation omitted). "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against

4

corruption and to hold the governors accountable to the governed." John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989) (citation omitted).  The statute provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . shall make the records promptly available to any person."  5 U.S.C. § 552(a)(3)(A).  Consistent with this statutory mandate, federal courts have jurisdiction to order the production of records that an agency improperly withholds.  See id. § 552(a)(4)(B); Reporters Comm., 489 U.S. at 754-55.  "At all times courts must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure.'"  Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting Dep't of State v. Ray, 502 U.S. 164, 173 (1991)).

As previously noted, the parties have cross-moved for summary judgment.  In the course of the briefing, they have helpfully narrowed the issues remaining in dispute to three: (1) Whether Plaintiff is entitled to summary judgment as a matter of law because Defendant filed a Motion for Summary Judgment instead of an Answer; (2) Whether Defendant properly withheld portions of four documents pursuant to Exemptions 6 and 7(C); and (3) Whether OPR has satisfied its FOIA obligations in regard to the documents referred to EOUSA.  Before addressing these in turn, the Court notes that Plaintiff does not challenge the adequacy of the search or the applicability of Exemption 5 to any of the records at issue.  The Court thus need not discuss those topics.

A.  MSJ vs. Answer

Plaintiff first asserts that because OPR did not file an Answer to his Complaint, but instead filed only a Motion for Summary Judgment, it is deemed to have admitted all matters alleged, thus entitling Parker to summary judgment as a matter of law.  See Pl. Mot. at 4-5.

Plaintiff cites no case law for this novel proposition; in fact, precedent cuts the other way.  As another judge in this district explained, "A defendant . . . is not required to respond in the form of an answer before making a motion for summary judgment, which may be made by a defending party 'at any time.'"  Jones v. Dep't of Justice, 601 F. Supp. 2d 297, 302 (D.D.C. 2009) (quoting Fed. R. Civ. P. 56(b)) (citing Hubicki v. ACF Indus., Inc., 484 F.2d 519, 522 (3d Cir. 1973); Gifford v. Travelers Protective Ass'n of Am., 153 F.2d 209, 210-11 (9th Cir. 1946); 10A C. Wright, A. Miller, M. Kane, Fed. Practice & Proc. 3d § 2718 (1998)); see also First Nat'l Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 290, 292 n.20, 299 (1968) (affirming grant of summary judgment to defendant who never filed answer during litigation spanning more than six years); Koch v. Walter, 935 F. Supp. 2d 143, 147 n.3 (D.D.C. 2013) (rejecting plaintiff's objection to defendant's filing motion for summary judgment instead of answer).

Plaintiff insists that Jones "merely [held] that a party may file a Summary Judgment Motion or Rule 12 Motion prior to filing an Answer in a civil action."  ECF No. 30 (Reply) at 3. Not so.  Jones rejected the exact argument Plaintiff makes here — namely, that "because the defendant did not file an answer denying the allegations in the complaint but instead filed a motion for summary judgment, judgment should be awarded to plaintiff."  601 F. Supp. 2d at 302 (emphasis added).  In so doing, Jones explained that "it is standard practice in FOIA cases for the defendant to file a motion for summary judgment instead of filing a responsive pleading." Id. (emphasis added).  Indeed, "[s]uch a practice is substantively no different than filing a motion under Rule 12(b)(6) accompanied by matters outside the pleadings, which is then converted by operation of Rule 12(b) to one under Rule 56." Id.

Defendant's actions here, furthermore, were consistent with Orders from this Court. Following two requests for an extension of time to respond to Plaintiff's Complaint, each of

which the Court granted, <u>see</u> Minute Orders of July 28, 2015, and Sept. 17, 2015, the Court

ordered that "Defendant shall answer or <u>otherwise respond</u> to the Complaint by September 21,

2015." Minute Order of Sept. 17, 2015 (emphasis added). In filing a Motion for Summary

Judgment, Defendant "otherwise respond[ed] to the Complaint," just as the Court directed.

     Plaintiff's procedural gambit thus fails to persuade.

     B.  <u>Exemptions 6, 7(C)</u>

     Parker next objects to Defendant's invocation of Exemptions 6 and 7(C) to withhold

portions of four records — labeled as OPR-3, -4, -9, and -75. <u>See</u> Pl. Mot. at 9. These are the

documents that the Court has now reviewed *in camera*. Before proceeding, it notes that because

Plaintiff does not challenge OPR's decision to rely on Exemption 5, the Court does not consider

any sections of these documents withheld pursuant to that exemption, even if those portions were

<u>also</u> withheld pursuant to Exemptions 6 and 7(C).

     Exemption 6 protects "personnel and medical files and similar files the disclosure of

which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C.

§ 552(b)(6). Exemption 7(C) excludes "records of information compiled for law enforcement

purposes . . . to the extent that the production of such law enforcement records or information . . .

could reasonably be expected to constitute an unwarranted invasion of personal privacy." <u>Id.</u>,

§ 552(b)(7)(C). These provisions require agencies and reviewing courts to "balance the privacy

interests that would be compromised by disclosure against the public interest in release of the

requested information." <u>Beck v. Dep't of Justice</u>, 997 F.2d 1489, 1491 (D.C. Cir. 1993) (quoting

<u>Davis v. Dep't of Justice</u>, 968 F.2d 1276, 1281 (D.C. Cir. 1992)).

     Although Exemptions 6 and 7(C) both require agencies and reviewing courts to undertake

the same weighing of interests, the balance tilts more strongly toward nondisclosure in the

context of Exemption 7(C) because its "privacy language is broader than the comparable

language in Exemption 6 in two respects." <u>Reporters Comm.</u>, 489 U.S. at 756.  First, Exemption

6 encompasses only "clearly unwarranted" invasions of privacy, while Exemption 7(C) omits the

adverb "clearly."  <u>Id.</u>  Second, Exemption 6 prevents disclosures that "would constitute" an

invasion of privacy, while Exemption 7(C) targets any disclosures that "could reasonably be

expected to constitute" such an invasion.  <u>Id.</u>  These differences are the result of specific

amendments and reflect Congress's conscious choice to provide greater protection to law-

enforcement materials than to personnel, medical, and other similar files.  <u>Id.</u>  This Circuit,

accordingly, has held that Exemption 7(C) "establishes a lower bar for withholding material"

than Exemption 6.  <u>See</u> <u>ACLU v. Dep't of Justice</u>, 655 F.3d 1, 6 (D.C. Cir. 2011); <u>see also</u> <u>Beck</u>,

997 F.2d at 1491.

### 1. *Law-Enforcement Purposes*

If the withheld records were "compiled for law enforcement purposes," the Court need

only address whether the agency has properly invoked Exemption 7(C); there is no requirement

to consider the higher bar for withholding of Exemption 6.  In determining if the records were

compiled for such purposes, "the focus is on how and under what circumstances the requested

files were compiled, and whether the files sought relate to anything that can fairly be

characterized as an enforcement proceeding."  <u>Jefferson v. Dep't of Justice, Office of Prof'l

Responsibility</u>, 284 F.3d 172, 176-77 (D.C. Cir. 2002) (internal quotation marks and citations

omitted).  "[I]f [an] investigation is for a possible violation of law, then the inquiry is for law

enforcement purposes, as distinct from customary surveillance of the performance of duties by

government employees."  <u>Id.</u> at 177.

The D.C. Circuit and this Court have previously held that OPR records relating to the investigation of an AUSA for possible violations of civil or criminal law are compiled for law-enforcement purposes.  See Kimberlin v. Dep't of Justice, 139 F.3d 944, 947-48 (D.C. Cir. 1998); Bartko v. Dep't of Justice, 128 F. Supp. 3d 62, 69-70 (D.D.C. 2015).  The parties agree that the records Plaintiff seeks here are likewise correctly considered records compiled for law-enforcement purposes.  See Def. Mot. at 22; ECF No. 28 (Opposition) at 3.  The Court thus will consider only Exemption 7(C).

### 2. *Private vs. Public Interest*

The first step in the Exemption 7(C) analysis is to determine whether there is, in fact, a privacy interest in the materials sought.  See ACLU, 655 F.3d at 6.  To constitute a privacy interest under FOIA, the claimed interest must be "substantial."  Multi Ag Media LLC v. USDA, 515 F.3d 1224, 1229-30 (D.C. Cir. 2008); see also Roth v. Dep't of Justice, 642 F.3d 1161, 1174 (D.C. Cir. 2011).  "[S]ubstantial," however, "means less than it might seem.  A substantial privacy interest is anything greater than a *de minimis* privacy interest."  Multi Ag Media, 515 F.3d at 1229-30.

In a typical case, it is well established that "individuals have an obvious privacy interest cognizable under Exemption 7(C) in keeping secret the fact that they were subjects of a law enforcement investigation."  Nation Magazine, Washington Bureau v. U.S. Customs Serv., 71 F.3d 885, 894 (D.C. Cir. 1995); see also Fitzgibbon v. CIA, 911 F.2d 755, 767 (D.C. Cir. 1990) ("It is surely beyond dispute that 'the mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation.'") (quoting Branch v. FBI, 658 F. Supp. 204, 209 (D.D.C. 1987)).  "That privacy interest also extends to third parties who may be mentioned in investigatory files, as well as to witnesses and informants

who provided information during the course of an investigation." Nation Magazine, 71 F.3d at

894.  "A government employee," moreover, "has at least some privacy interest in his own

employment records, an interest that extends to 'not having it known whether those records

contain or do not contain' information on wrongdoing, whether that information is favorable or

not." Beck, 997 F.2d at 1494 (quoting Dunkelberger v. Dep't of Justice, 906 F.2d 779, 781

(D.C. Cir. 1990)).

   Those privacy interests, however, are not implicated by the disclosures requested here,

Parker contends, because Bridges Jackson's misconduct and the fact of DOJ's investigation have

already been made public through court documents, records released to Plaintiff's counsel

pursuant to another FOIA request, and Associated Press news reports.  See Pl. Mot. at 10 (citing

ECF No. 10-2 (Declaration of Daniel Stotter), Exhs. A, B, C; Parker Decl., ¶ 3 & Exhs. D, E).

Together, those documents reveal information about Bridges Jackson's career, the nature of the

misconduct, and some of the subsequent consequences.

   Specifically, they reveal where Bridges Jackson attended law school, when she received

her licenses to practice law in Kentucky and Arkansas, where she worked prior to becoming an

AUSA, and that she served as an AUSA in Arkansas from 1989 to 2001.  See ECF No. 10-2,

Exh. A at 1-3.  They also disclose that Bridges Jackson failed to pay her Kentucky and Arkansas

bar-association dues, that her licenses therefore were administratively suspended in 1987 and

1989, that she did not disclose those suspensions to the U.S. Attorney's Office, and that, on the

contrary, she periodically provided the Office with certifications that she was an active member

of both bars.  Id. at 3-4; ECF No. 10-3, Exh. D.  Finally, those documents show that DOJ began

investigating Bridges Jackson's license status in 2001, that she thereafter resigned her position as

an AUSA and agreed to surrender her Arkansas law license, see ECF No. 10-2, Exh. A at 4, that

DOJ's investigation triggered a Complaint by the Inquiry Commission in Kentucky alleging professional misconduct, and that Bridges Jackson admitted guilt and moved for a two-year suspension from the practice of law, which the Kentucky Supreme Court granted in 2011. See ECF No. 10-2, Exh. B at 2.

These public documents "undoubtedly . . . diminish [Bridges Jackson's] interest in privacy: the public already knows who [she] is, what [she] was accused of," and the sanctions incurred. See Kimberlin, 139 F.3d at 949. But further details pertinent to substantial privacy interests remain as yet undisclosed. The information withheld in OPR-3, -4, -9, and -75 includes details about how Bridges Jackson misrepresented her status as an active bar member and about internal disciplinary actions considered or taken in response. OPR-9 also lists the names of OPR non-attorney employees. See Third Barnett Decl., ¶ 27. And OPR-75, OPR's report of its investigation into Bridges Jackson's conduct, describes information relating to her work as an AUSA separate from the bar-membership issues, including evaluations by her supervisor, and other personal information relating to her work history.

In this respect, the instant case is much like the dispute in Kimberlin. There, the AUSA investigated by OPR made a statement to the press that revealed his identity, "what he was accused of, and that he received a relatively mild sanction." 139 F.3d at 949. The Court of Appeals nonetheless concluded that he still retained a substantial privacy interest "in avoiding disclosure of the details of the investigation [and] of his misconduct," as such disclosure "could reasonably be expected to constitute an unwarranted invasion of [his] personal privacy." Id. It further noted that individuals other than the AUSA whose names appeared in the records "retain[ed] a strong privacy interest in not being associated with an investigation involving professional misconduct." Id. For the same reasons, the Court so concludes here: Bridges

Jackson and the other named individuals retain substantial privacy interests in the withheld records.

The Court must balance that substantial privacy interest against the public interest in releasing the records.  In this analysis, the public interest is limited to FOIA's core purpose of "shed[ding] light on an agency's performance of its statutory duties."  Reporters Comm., 489 U.S. at 773.  Courts, moreover, must distinguish between the public interest that can generally exist in a subject that relates to a FOIA request and the public interest that might or might not be served by disclosure of the specific records that are responsive to a given request.  See Elec. Privacy Info. Ctr. v. Dep't of Defense, 355 F. Supp. 2d 98, 102 (D.D.C. 2004) (noting that fact that a plaintiff has provided evidence "that there is some media interest in data mining as an umbrella issue does not satisfy the requirement that Plaintiff demonstrate interest in the specific subject of Plaintiff's FOIA request").  The key consideration is whether disclosure of the records at issue would serve an identified public interest and therefore warrant the overriding of personal privacy.  See Lopez v. EOUSA, 598 F. Supp. 2d 83, 89 (D.D.C. 2009) (holding that EOUSA's Vaughn Index demonstrates that disclosure of particular information withheld "is not likely to advance any significant public interest, even if the plaintiff could establish that the public has a significant interest in the material he is seeking"); but see Judicial Watch, Inc. v. U.S. Secret Serv., 579 F. Supp. 2d 151, 154 (D.D.C. 2008) (holding that disclosure of names of individuals requesting White House access for visitors was not precluded under Exemption 7(C) because names would shed light on why visitor came to White House).

Parker argues that the public interest favoring disclosure is great.  He contends that disclosure will "help[] the public to understand how the U.S. Attorney's Office could have hired and retained an Assistant U.S. Attorney for many years, who was not licensed or authorized to

practice law," as well as to understand OPR's response to the allegations, including its investigation and any subsequent policy recommendations to prevent similar problems from happening again.  See Parker Decl., ¶¶ 4-5.  He further maintains that "the public has a very significant interest in knowing whether" AUSAs "are qualified and licensed to practice law" because if they are not, the interests of the United States, its agencies, and the public may be harmed.  Id., ¶ 7.

The Court agrees that prosecutorial misconduct is "an undeniably serious issue."  Bartko, 128 F. Supp. 3d at 71.  But the Court's in camera review of the specific records Plaintiff seeks confirms that none "would reveal much, if anything, about systemic prosecutorial misconduct" related to the unauthorized practice of law or DOJ's systemic efforts to prevent, identify, and/or respond to misconduct, such that any public interest would outweigh the privacy interests of Bridges Jackson and the named third parties.  See id. at 72.  OPR thus properly withheld the records under Exemption 7(C).

### 3. *Segregability*

FOIA requires that "[a]ny reasonably segregable portion of a record . . . be provided to any person requesting such record after deletion of the portions which are exempt."  5 U.S.C. § 552(b).  Accordingly, "non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions."  Mead Data Central, Inc. v. Dep't of the Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977).  Still, an agency is not obligated to segregate non-exempt material if "the excision of exempt information would impose significant costs on the agency and produce an edited document with little informational value."  Neufeld v. IRS, 646 F.2d 661, 666 (D.C. Cir. 1981), overruled on other grounds by Church of Scientology of California v. IRS, 792 F.2d 153 (D.C. Cir. 1986).  Information that would have no meaning,

therefore, is not considered reasonably segregable.  See Mead Data Center, Inc., 566 F.2d at 261

n.55 ("A court may decline to order an agency to commit significant time and resources to the

separation of disjointed words, phrases or even sentences which taken separately or together

have minimal or no information content.").

Plaintiff does not raise any specific complaints with OPR's segregation decisions or

justifications.  He does, however, make a general request that the Court determine if OPR

"properly applied its 'segregability' requirement to provide Plaintiff with all non-exempt

portions" of OPR-3, -4, -9, and -75.  See Pl. Mot. at 12.  "In making a determination as to

segregability . . . a district court judge 'may examine the contents of . . . agency records *in

camera*' . . . . This Circuit has interpreted this language to give district court judges broad

discretion in determining whether *in camera* review is appropriate" in run-of-the-mill cases.

Am. Immigration Council v. Dep't of Homeland Sec., 30 F. Supp. 3d 67, 80 (D.D.C. 2014)

(quoting Armstrong v. Exec. Office of the President, 97 F.3d 575, 578 (D.C. Cir. 1996)); cf.

ACLU v. Dep't of Defense, 628 F.3d 612, 626 (D.C. Cir. 2011) ("*In camera* inspection is

particularly a last resort in national security situations . . . .").

The Court has reviewed *in camera* the partially withheld documents to determine whether

they contain any material that can be reasonably segregated and disclosed "without

unwarrantably impinging upon anyone's privacy."  Kimberlin, 139 F.3d at 950.  Having done so,

the Court is satisfied that there are no segregability problems.  No additional portions of the

partially redacted records need be released.

C.  Referred Documents

Finally, Plaintiff challenges "Defendant's actions involving their referral of responsive records to the EOUSA."  Reply at 5.  As he does not challenge OPR's referrals to OIP and JMD, the Court need not address those.  Id.

DOJ's regulations permit a component to "refer the responsibility for responding" to a records request when it "believes that a different component, agency, or other Federal Government office is best able to determine whether to disclose the record."  28 C.F.R. § 16.4(d)(2)(i).  Pursuant to that regulation, OPR referred 56 pages that had originated in EOUSA or a U.S. Attorney's Office to EOUSA for processing and direct response to Parker. See ECF No. 28-1 (Fourth Declaration of Ginae Barnett), ¶ 4.  Plaintiff argued in his Cross-Motion for Summary Judgment, filed on June 24, 2016, that he had "not received any of the responsive records to his February 6, 2014 FOIA request that DOJ OPR shipped off to EOUSA . . ., and . . . Defendant DOJ OPR has not provided any lawful basis for the continued withholding of any of those responsive records."  Pl. Mot. at 7.  But, as OPR pointed out, see Opp. at 6-7, EOUSA has provided some of the responsive records.  On February 9, 2016, EOUSA produced 30 pages in full and, pursuant to Exemptions 5, 6, and 7(C), withheld 19 pages in part and 17 pages in full.  See Fourth Barnett Decl., ¶ 5 & Exh. A.  Because EOUSA had done so, OPR contended, Plaintiff's argument was moot.  See Opp. at 7.

Plaintiff then recast the first part of his referral-related grievance in his Reply.  He argued that "OPR did not ever take any actions to independently review the EOUSA's referral determination as to the records which the DOJ OPR located in OPR systems of records" and "therefore completely abdicated" and violated "its FOIA response duties."  Reply at 6.  Although that statement is somewhat confused, the Court understands Plaintiff to argue that OPR was

obligated by FOIA to review EOUSA's decision to withhold some of the responsive records referred to it.

Parker bases his position on McGehee v. CIA, 697 F.2d 1095 (D.C. Cir. 1983), which explained that "when an agency receives a FOIA request for 'agency records' in its possession, it must take responsibility for processing the request. It cannot simply refuse to act on the ground that the documents originated elsewhere." Id. at 1110. But this Circuit later clarified that the agency receiving the initial request "may acquit itself [of the duty imposed] through a referral, provided the referral does not lead to improper withholding." Sussman v. U.S. Marshals Serv., 494 F.3d 1106, 1118 (D.C. Cir. 2007). Contrary to Parker's position, therefore, a component need not necessarily follow up on or independently review the disclosure decision of the component, agency, or office to which it referred the records for decision. Whether the referring agency retains a duty to act depends on whether the referral resulted in an improper withholding.

Plaintiff's second referral-related grievance — that OPR did not provide the legal bases for withholding responsive records referred to EOUSA — goes to that question. See Pl. Mot. at 7; Reply at 6-7. Notably, OPR never argues that Plaintiff must sue EOUSA to obtain the required explanations, so the Court will assume that OPR retains responsibility here for the propriety of the withholdings. Yet, as Plaintiff points out, OPR never provided a description of the specific legal bases for EOUSA's withholdings beyond the general citations to exemptions given in the form letter that accompanied EOUSA's production. See Fourth Barnett Decl., ¶ 5 & Exh. A. The Vaughn Index supplied by OPR discusses only pages it withheld; it does not address EOUSA's withholdings. See Third Barnett Decl., Exh. C at 1. An agency, however, has the burden to establish that a claimed exemption applies. Citizens for Responsibility & Ethics in Wash. v. Dep't of Justice, 746 F.3d 1082, 1088 (D.C. Cir. 2014). It "may carry that burden by

submitting affidavits that 'describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" Id. (quoting Larson v. Dep't of State, 565 F.3d 857, 862 (D.C. Cir. 2009)).  Because OPR "does not assert that it has made any effort to ensure that" Parker received the explanations to which he is legally entitled, see Hall v. CIA, 668 F. Supp. 2d 172, 182 (D.D.C. 2009), it failed to carry its burden.

The Court, accordingly, will deny OPR's Motion as to these EOUSA documents.  After providing an explanation to Plaintiff, unless he is satisfied, the agency shall renew its Motion for Summary Judgment.

## IV.   Conclusion

For the foregoing reasons, the Court will deny Plaintiff's Motion for Summary Judgment. It will grant Defendant's Motion as to all issues except the referral of documents to EOUSA.  A separate Order so stating will issue this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date:  October 12, 2016