# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LONNIE J. PARKER,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE, OFFICE OF PROFESSIONAL RESPONSIBILITY,<br><br>    Defendant. | Civil Action No. 15-1070 (JEB) |

## MEMORANDUM OPINION

Much like the story arc of a classic horror flick, the cast of disputed documents in this Freedom of Information Act reel has now been whittled down to one. Plaintiff Lonnie J. Parker initially requested records relating to the Government's discipline of a former Assistant United States Attorney in the Eastern District of Arkansas, who was caught prosecuting cases without a valid bar license. Defendant Department of Justice's Office of Professional Responsibility responded by identifying all relevant records, releasing some, withholding most (in part or in full), and referring still others to separate DOJ components — including the Executive Office for U.S. Attorneys — for processing. The Court's prior Opinion largely upheld those release decisions, but found that OPR had not explained the legal bases for withholdings made following the EOUSA referral. Defendant has since clarified that area of confusion.

Satisfied with that explanation, Parker turns to one final issue in this latest round of summary-judgment briefing. He points out that a letter from the EOUSA production is lacking its attachment. Despite OPR's retort that the attachment is both non-responsive and exempt from

1

disclosure, the Court finds that Defendant must segregate and release a few paragraphs. Each side's Motion will thus be granted in part and denied in part.

**I.     Background**

Because the prior Opinion sets forth the background, the Court skims over the bulk of the case's particulars. See Parker v. DOJ, 214 F. Supp. 3d 79, 82-83 (D.D.C. 2016). Broadly speaking, this FOIA action pertains to Parker's request for records "regarding any investigation or consideration of disciplinary actions involving the unauthorized practice of law by former Assistant U.S. Attorney Lesa Gail Bridges Jackson." ECF No. 23-1 (Revised Third Declaration of Ginae Barnett), Exh. D (FOIA Request) at 1.

Although OPR initially neither confirmed nor denied that there was information pertaining to Bridges Jackson's bar-lapse discipline, the agency later decided to search for and release records. Parker, 214 F. Supp. 3d at 83. It identified roughly 250 pages of responsive material, releasing some in their entirety, withholding (in part or in full) the majority, and referring the remainder to EOUSA and other DOJ components for processing. Id.; see Third Barnett Decl., ¶ 8.

The Court resolved several issues relating to this production in its earlier Opinion. Relevant here, it held that OPR had properly withheld portions of four challenged documents under FOIA Exemption 7(C) — which protects the privacy of individuals mentioned in law-enforcement records — and that no further material could be meaningfully segregated and released. See Parker, 214 F. Supp. 3d at 85-89. As to 56 pages of documents referred to EOUSA, however, the Court found that OPR had improperly omitted "a description of the specific legal bases for EOUSA's withholdings." Id. at 90.

Defendant has now offered explanations for EOUSA's decisions in a renewed Motion for Summary Judgment. See ECF No. 39-2 (Declaration of David Luczynski), Exh. C (EOUSA Vaughn Index). Parker has responded with his own Cross-Motion.

## II.     Analysis

Before the Court reaches the *dénouement* of this case — regarding a missing attachment from an already-produced letter — it quickly disposes of two of the parties' preliminary arguments. First, following the Government's new explanations, Parker no longer challenges its withholding of the 56 pages of EOUSA materials at issue last time. See Def. Reply at 2-3; see also Parker, 214 F. Supp. 3d at 90-91. Second, Plaintiff initially argues that OPR should have searched harder for the aforementioned attachment. See Pl. Mot. at 5-9. It turns out, however, that Defendant did look for the document after Parker prodded the agency to do so and, in fact, found it. See ECF No. 42-1, (Fifth Declaration of Ginae Barnett), ¶ 6. Plaintiff thus rightfully concedes that his "prior search objections, pertaining to Defendant's failure to perform this follow-up action, ha[ve] now been addressed." Pl. Reply at 5 & n.4. This search-adequacy challenge, too, can now be put to rest.

The lone surviving dispute, therefore, is whether OPR should produce that attachment — a document that was appended to a previously disclosed cover letter from U.S. Attorney Paula Casey found among the EOUSA records. See ECF No. 28-1 (Fourth Declaration of Ginae Barnett), Exh. A (EOUSA Response) at OPR-41 (May 26, 2000, Letter from Paula J. Casey, U.S. Att'y, E.D. Ark., to H. Marshall Jarrett, Counsel, OPR) at 1. The Casey Letter is addressed to the head of OPR and asks for his input on a five-day suspension of Bridges Jackson that was recommended "for reasons set forth in the enclosed draft letter." Id. That attachment, which the

Court has reviewed *in camera*, is a draft letter to Bridges Jackson proposing such a suspension for conduct entirely unrelated to bar licensure.

Should the attachment be released? Answering this question involves examining, as an initial matter, whether it is responsive to Plaintiff's request and, next, if FOIA exemptions apply to all or parts of the document.

A. Responsive Records

The threshold inquiry is whether the draft document attached to the Casey Letter is even responsive to Parker's FOIA request. In other words, the statute only compels disclosure "once an agency identifies a record it deems responsive to a FOIA request." Am. Immigration Lawyers Ass'n v. Exec. Office for Immigration Review, 830 F.3d 667, 677 (D.C. Cir. 2016). Not so with non-responsive materials. While Plaintiff asked for all records regarding Bridges Jackson's bar-lapse discipline, the attachment, on its face, discusses only another unrelated disciplinary incident. OPR therefore contends that it is not responsive. See Def. Reply at 6-7.

Considered alone, it is unclear whether the document is encompassed by Parker's FOIA request. Yet the Court need not decide that issue, as it considers the draft letter's possible responsiveness as an attachment to an already-produced responsive record — namely, the Casey Letter.

It is not disputed that the Casey Letter is, in fact, responsive. Although it does not comment on Bridges Jackson's license to practice law or lack thereof, OPR found it in the "file pertaining to former AUSA Bridges Jackson's bar lapse." Fifth Barnett Decl., ¶¶ 3, 5-6. Presumably, as a result, the Government agrees that the Casey Letter is "a responsive document." Def. Reply at 7.

4

While this does not push Parker past the finish line, he is now off the starting block. Significantly, the D.C. Circuit recently held in AILA that "if the government identifies a record as responsive to a FOIA request," it cannot "redact particular information within the responsive record on the basis that the information is non-responsive." 830 F.3d at 677. In other words, a single record cannot be split into responsive and non-responsive bits. If the Casey Letter and its attachment are one record — *i.e.*, "a unit" — then FOIA requires disclosure of both together. Id.

The key is understanding what it means to be a single "record." While FOIA "provides no definition of the term 'record,'" agencies "in effect define a 'record' when they undertake the process of identifying records." Id. at 678 (emphasis added); see McGehee v. CIA, 697 F.2d 1095, 1108 (D.C. Cir. 1983). In an expansive bureaucracy, documents and information will not always fall into discrete sets. When collecting these materials together, an agency might combine pages into one document (*e.g.*, a set of handwritten notes) or split others into multiple parts (*e.g.*, a compendium of memoranda). "[T]he dispositive point is that, once an agency itself identifies a particular document or collection of material — such as a chain of emails — as a responsive 'record,'" then it must produce the whole, absent other statutory exemptions that allow redactions. AILA, 830 F.3d at 678. Courts may then review that determination.

DOJ also provides helpful criteria "for agencies to take into account when determining whether it is appropriate to divide . . . a document into discrete 'records.'" Id. (citing DOJ, OIP Guidance: Determining the Scope of a FOIA Request, FOIA Update, Vol. XVI, No. 3 (1995), https://www.justice.gov/oip/blog/foia-update-oip-guidance-determining-scope-foia-request); see Shapiro v. CIA, No. 14-19, 2017 WL 1216505, at *11 (D.D.C. Mar. 31, 2017). As Judge Christopher R. Cooper of this district ably summarized, those considerations include "the requester's intent, maintaining the integrity of the released documents, the scope of the request,

5

the agency's own knowledge regarding storage and maintenance of documents, efficiency, cost, resource allocation, and maintaining the public's trust in transparency." Shapiro, 2017 WL 1216505, at *11.

The Court need only discuss a few of these factors, as they largely favor treating the Casey Letter and its attached draft letter as one indivisible whole. The Casey Letter, in fact, itself touches on the subject matter of the attachment and refers the recipient to examine its contents. See Casey Letter at 1 (pointing reader to "reasons set forth in the enclosed draft letter"); see also AILA, 830 F.3d at 678 (asking how "an agency itself identifies a particular document or collection of material"). While OPR notes that the enclosure was not initially found in the same location as the cover letter, that fact is not dispositive. See Def. Reply at 7; Fifth Barnett Decl., ¶¶ 3, 5-6. For one, in the file where it was found, the attachment and another copy of the Casey Letter were co-located. See Fifth Barnett Decl., ¶ 6. Lay requesters also are hardly privy to OPR's numerous document-management systems, and there is no indication that Parker asked for the contents of some specific file and not others. See ECF No. 14-1 (Second Declaration of Ginae Barnett), ¶ 6; Third Barnett Decl., ¶¶ 4-7; see also Shapiro, 2017 WL 1216505, at *11. From the Government's description, moreover, the attachment appears to have been easily retrievable after a search of its records systems. See Fifth Barnett Decl., ¶ 6.

Although there is no *per se* rule that letters and their attachments must be treated as one, the Court finds that these two pieces belong together. See Hall v. CIA, 881 F. Supp. 2d 38, 62 (D.D.C. 2012) (requiring production where agency "maintained and controlled the documents that reference the other documents, many of them attachments"). FOIA therefore requires complete disclosure of the whole record unless information in the Casey Letter's attached draft document is covered by exemptions. The Court turns to that question next.

B.  Reasonably Segregable, Non-Exempt Material

The agency must "disclose all reasonably segregable, nonexempt portions of the requested record." Assassination Archives & Research Ctr. v. CIA, 334 F.3d 55, 58 (D.C. Cir. 2003).  OPR contends that Exemptions 5, 6, and 7(C) apply, though it mentions nothing about potential segregability in its briefing.  See Def. Reply at 7-12.  This Court nonetheless has an "affirmative duty to consider the segregability issue *sua sponte*."  Elliott v. USDA, 596 F.3d 842, 851 (D.C. Cir. 2010) (quoting Morley v. CIA, 508 F.3d 1108, 1123 (D.C. Cir. 2007)).  It does so here in the context of the applicable exemptions.

Before the Court dives in, a further breakdown of the documents at issue may help the reader.  First off, in Casey's cover letter, she discusses a recent "problem with an Assistant United States Attorney in my office" unconnected with bar licensure and mentions that she "proposed a five day suspension for reasons set forth in the enclosed draft letter" to the AUSA.  See Casey Letter at 1.  That appended draft letter can then be broken up into three segments.  The first introductory paragraph proposes that five-day suspension, without mentioning the specific reason, and lists the federal regulations and public agency guidance that govern all such suspensions.  The next six paragraphs, spanning pages one and two, discuss a particular incident and the justification for that proposed disciplinary action.  The remainder of the attachment, from the last full paragraph on page two onward, details DOJ's suspension procedures as set forth in the aforementioned published regulations and public guidance.  See, e.g., 5 C.F.R. §§ 752.201- .203.  That last section makes no mention of the specifics of Bridges Jackson's alleged misconduct.

In now applying the invoked FOIA exemptions, all point the same way — namely, that OPR should release both the introductory paragraph and the terminal part detailing DOJ

7

procedures, but may redact the reasons behind the proposed suspension. The Court discusses Exemption 5 and then Exemptions 6 and 7(C) together.

First, Exemption 5 permits an agency to withhold "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency," including records protected by the "deliberative process privilege." 5 U.S.C. § 552(b)(5). That privilege covers "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001) (quoting NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 150 (1975)); accord In re Sealed Case, 121 F.3d 729, 737 (D.C. Cir. 1997). "The 'key question' in identifying 'deliberative' material is whether disclosure of the information would 'discourage candid discussion within the agency.'" Access Reports v. DOJ, 926 F.2d 1192, 1195 (D.C. Cir. 1991) (quoting Dudman Comms. Corp. v. Dep't of Air Force, 815 F.2d 1565, 1567-68 (D.C. Cir. 1987)); see Nat'l Sec. Archive v. CIA, 752 F.3d 460, 462 (D.C. Cir. 2014) (explaining purpose "to encourage the candid and frank exchange of ideas in the agency's decisionmaking process").

As with other exemptions, "if the government can segregate and disclose non-privileged factual information within a document, it must." Loving v. Dep't of Defense, 550 F.3d 32, 38 (D.C. Cir. 2008). "[T]he privilege applies only to the 'opinion' or 'recommendatory' portion of the report, not to factual information which is contained in the document." Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 867 (D.C. Cir. 1980). The agency, moreover, may waive the privilege by placing "a specific fact . . . in the public domain." Public Citizen v. Dep't of State, 11 F.3d 198, 201 (D.C. Cir. 1993); see Davis v. DOJ, 968 F.2d 1276, 1279 (D.C. Cir. 1992).

These principles lead to partial disclosure here. To begin, the reasons for the five-day-suspension "recommendation[]" fall within the heartland of the privilege. See Klamath, 532 U.S. at 8 (quoting Sears, 421 U.S. at 150). Some assurance against later disclosure is necessary if government employees are expected to have "candid and frank" discussions of such sensitive topics as internal discipline. See Nat'l Sec. Archive, 752 F.3d at 462. The rest of the attachment, however, is not privileged. Its introductory paragraph reveals no content other than what the cover letter itself publicly discloses — i.e., that the U.S. Attorney planned to propose a five-day suspension. That paragraph then cites federal regulations and agency guidance on suspension procedures, and the later paragraphs describe those rules. See, e.g., 5 C.F.R. §§ 752.201-.203. The Court would be hard pressed to conclude that this disclosure of information about DOJ's disciplinary procedures that are, in substance, already public knowledge would in any way stifle agency deliberations. See Coastal States, 617 F.2d at 868 (rejecting privilege as to "simply straightforward explanations of agency regulations in specific factual situations"). Because those portions are written in neutral language such that they are "severable without compromising the [privileged] remainder of the document[]," EPA v. Mink, 410 U.S. 73, 91 (1973), OPR must disclose these segments.

Exemptions 6 and 7(C) cast no wider a net. These two rules "seek to protect the privacy of individuals identified in certain agency records." ACLU v. DOJ, 655 F.3d 1, 6 (D.C. Cir. 2011). Exemption 6 protects "personnel and medical files and similar files" where disclosure "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) permits a withholding of "records or information compiled for law enforcement purposes" where disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." Id. § 552(b)(7). The latter exemption "establishes a lower bar for

withholding material." ACLU, 655 F.3d at 6. As the Court held last time with similar documents regarding internal investigations of AUSA misconduct, this attachment constitutes a law-enforcement record such that the more liberal Exemption 7(C) applies. Parker, 214 F. Supp. 3d at 86. The Court thus need not consider Exemption 6. Id.

As with the deliberative-process privilege, the Court must ask if portions that do not implicate privacy can be segregated and released. See Shapiro v. DOJ, No. 13-555, 2017 WL 908179, at *2 (D.D.C. Mar. 6, 2017). The agency likewise may not rely on Exemption 6 or 7(C) to withhold "information that has been 'officially acknowledged' or is in the 'public domain.'" Bartko v. DOJ, 62 F. Supp. 3d 134, 142 (D.D.C. 2014) (quoting Davis, 968 F.2d at 1279).

The result, then, is very much the same. First off, these privacy exemptions may protect the descriptions of Bridges Jackson's alleged wrongdoing and the reasons for why that conduct warranted discipline. As the Court previously held, OPR may withhold the details of "internal disciplinary actions considered or taken." Parker, 214 F. Supp. 3d at 87-89. While those middle paragraphs may be redacted, the rest must be released. The attachment's introductory paragraph includes "specific information in the public domain that appears to duplicate that being withheld" — to wit, the proposal of a five-day suspension. Wolf v. CIA, 473 F.3d 370, 378 (D.C. Cir. 2007) (quoting Afshar v. Dep't of State, 702 F.2d 1125, 1130 (D.C. Cir. 1983)); see Casey Letter at 1 ("I proposed a five day suspension for reasons set forth in the enclosed draft letter."). The remainder of the first paragraph and the final section of the attachment, again, reveal nothing more than neutral summaries of applicable agency regulations that contain only public information, not private facts about Bridges Jackson.

In sum, of the full Casey Letter attachment, Defendant must release the first paragraph and the portion beginning with the last full paragraph of page two until the end of the document. The rest it may elect to redact.

## III. Conclusion

For these reasons, the Court will grant in part and deny in part OPR's Motion for Summary Judgment and grant in part and deny in part Parker's Cross-Motion for Summary Judgment. The Court will also order Defendant to release portions of the Casey Letter attachment to Plaintiff within fourteen days. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: August 16, 2017